IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| William F. Andrews and | ) | Case No.: 01-42562-JJR-13 |
| Virginia L. Andrews, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Virginia L. Andrews, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 06-40016-BGC |
| | ) | |
| AmSouth Bank; Life Insurance | ) | |
| Company of Alabama, | ) | |
| | ) | |
| Defendants. | ) | |

This Memorandum Opinion was not submitted by the Court for publication.

**Memorandum Opinion
on Motions to Strike Jury Demand**

The matters before the Court are:

1. The <u>Motion to Strike</u> filed on November 17, 2006, by the defendant AmSouth Bank (Proceeding No. 52); and

2. The <u>Motion to Strike Jury Demand</u> filed on April 5, 2007, by the defendant, Life Insurance Company of Alabama (Proceeding No. 69).

After notice, a hearing was held on May 5, 2007. Appearing were: Harvey B. Campbell, Jr. and Lloyd W. Gathings, attorneys for the plaintiff; James H. Greer and Stewart M. Cox, attorneys for AmSouth Bank (AmSouth); Robert D. McWhorter, Jr., the attorney for Life Insurance Company of Alabama (LICOA); and Linda B. Gore, the standing Chapter 13 trustee.

The matters were submitted on stipulations, briefs, arguments of counsel, and the records in this case and adversary proceeding.

As discussed below, the Court concludes that the plaintiff is not entitled to a jury trial.

## I. Findings of Fact

### A. The Debtors' Petition and Plan

The debtors filed a joint Chapter 13 petition on July 13, 2001. Along with the petition, they filed a proposed Chapter 13 plan. On February 14, 2002, they filed a modification to that proposed plan. The plan as modified was confirmed on February 25, 2002.

The confirmed plan required the Andrews to make monthly payments of $210.00 to the Chapter 13 trustee for 60 months. After receiving those funds, the trustee was ordered to disburse those funds: (1) first to administrative expense holders; (2) second to other priority claimants, if any; (3) third in satisfaction of secured arrearage claims; and (4) fourth to creditors holding unsecured claims.

In regard to one secured creditor, when the debtors' filed their petition, they owned real property located in Jacksonville, Alabama. That property was encumbered by a mortgage held by AmSouth. The confirmed plan required the debtors to make their regular monthly mortgage payments on that debt directly to AmSouth.

In an unrelated provision, paragraph 6 of the confirmation order following the heading "Order by the Court" provided, "The property of the estate shall not vest in the debtor(s) until a discharge is granted under Chapter 13 or this case is dismissed out of Court...." <u>Findings of Fact and Order Confirming Chapter 13 Plan and Providing For Related Matters</u> (Proceeding No. 22).

### B. AmSouth's Proofs of Claim

AmSouth filed three proofs of claim in this case relating to its mortgage claim. Those proofs of claim represent that AmSouth was owed $17,177.38 on the principal amount of its debt as of January 7, 2002 (claim no. 11); $3,859.28 for prepetition arrears as of January 7, 2002 (claim no. 11); and $1,274.44 for postpetition arrears as of January 25, 2001 (claim no.12).[1]

### C. Mr. Andrews' Death

During the course of this case, the parties' attorneys informed the Court that Mr. Andrews died on October 30, 2003.

---

[1] The third claim, claim number 10, was filed on November 30, 2001, for prepetition arrears of $1,300. The Court assumes that amount was included in the $3,859 requested through claim number 11 filed on January 11, 2002.

2

### D. AmSouth's Motion for Relief

AmSouth filed a motion for relief from the automatic stay on March 30, 2005. The bank contended that Mrs. Andrews failed to make her mortgage payments which became due during the 11 months from May 2003 through March 2005. <u>Motion for Relief From Automatic Stay</u> (Proceeding No. 34, Main Case No. 01-42562-BGC-13). AmSouth withdrew that motion on May 10, 2005.

### E. Mrs. Andrews' Complaint Against AmSouth and LICOA

On January 13, 2006, Mrs. Andrews filed the pending adversary proceeding. In her complaint Mrs. Andrews alleged that: (1) she acquired credit life insurance through AmSouth which insurance was designed to pay off the balance of the mortgage debt if Mr. Andrews died; (2) AmSouth purportedly contracted with LICOA to provide that insurance; (3) subsequent to Mr. Andrews' death, AmSouth refused to acknowledge satisfaction in full of the mortgage debt, contending that the insurance had lapsed because of nonpayment of premiums; and (4) LICOA refused to pay off the remainder of the debt which she owed to AmSouth.

In Count I of her amended complaint, Mrs. Andrews alleges that LICOA, "breached its insurance contract with... [her]." <u>Amended and Recast Complaint</u> at 4, ¶ 21 (Proceeding No. 61, A.P. No. 06-40016) (parenthetical added). She concludes that as a proximate result of that breach, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." <u>Id</u>. at 4-5, ¶ 22 (parenthetical added).

In Count II of her amended complaint, Mrs. Andrews alleges that she, "made a timely claim pursuant to the terms of the credit life insurance policy for the amount of the indebtedness remaining unpaid at the time of Mr. Andrews' death." <u>Amended and Recast Complaint</u> at 5, ¶ 24 (Proceeding No. 61, A.P. No. 06-40016). She contends that LICOA denied that claim, "in bad faith...." <u>Id</u>. She concludes that as a proximate result of LICOA's bad faith, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." <u>Id</u>. at 6, ¶ 25 (parenthetical added).

In Count III of her amended complaint, Mrs. Andrews alleges that LICOA "negligently or wantonly hired and/or supervised its agents...resulting in the wrongful conduct of its agents as set forth in Count IV and Count V." <u>Amended and Recast Complaint</u>, at 6-7, ¶ 27 (Proceeding No. 61, A.P. No. 06-40016). She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." <u>Id</u>. at 7, ¶ 28 (parenthetical added).

3

In Count IV of her amended complaint, Mrs. Andrews alleges that AmSouth is, "guilty of fraud, fraudulent suppression, and deceit in the sale and/or servicing of the insurance policy... [when it represented to her], that the premiums paid by Plaintiff were paid for a credit life insurance policy... which would pay the remaining unpaid indebtedness on Plaintiff's mortgage loan in the event of the death of William F. Andrews...." Amended and Recast Complaint at 8, ¶ 30 (Proceeding No. 61, A.P. No. 06-40016) (parenthetical added). She also alleges that the defendants failed "to disclose to Plaintiff that the premiums, although paid, were not used to keep a credit life insurance policy in force and effect...." Id. She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid..." Id. at 9, ¶ 34 (parenthetical added).

In Count V of her amended complaint, Mrs. Andrews alleges that AmSouth, "continued to negligently or wantonly collect credit life insurance premiums from the plaintiff for a period of years after the credit life insurance policy had allegedly been terminated due to a 60 day delay in payment." Amended and Recast Complaint at 9, ¶ 36 (Proceeding No. 61, A.P. No. 06-40016). She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid ...." Id. at 10, ¶ 37 (parenthetical added).

It is apparent from the complaint that the focal point of Mrs. Andrews' lawsuit is that AmSouth and LICOA wrongfully failed to satisfy, from the credit life insurance policy and its proceeds, the remainder of AmSouth's claim when Mr. Andrews died. This conclusion is supported by the fact that in paragraph 2 of her complaint, as amended, Mrs. Andrews concedes that her lawsuit is a "core proceeding" and "is a counterclaim based on the claim filed by the defendant, AmSouth Bank." Amended and Recast Complaint at 1, ¶ 2 (Proceeding No. 61, A.P. No. 06-40016).

### F. Request for a Jury Trial

The debtor requested a jury trial on her claims against both defendants. Neither AmSouth nor LICOA requested a jury trial, and both contend the debtor is not entitled to one.

### G. AmSouth's Motion to Suspend Payments

Following her husband's death, and despite filing the pending adversary proceeding, Mrs. Andrews continued to make her Chapter 13 plan payments and payments to AmSouth. AmSouth continued to accept payments both from the trustee and Mrs. Andrews until February 7, 2007, when it filed a motion to have the trustee suspend payments on its claims pending resolution of Mrs. Andrews' lawsuit. Motion to Suspend Payments From Trustee on AmSouth Banks Claims (Proceeding No. 54, Main Case No. 01-42562).

4

## II. Issue

Is the debtor entitled to a jury trial against either AmSouth or LICOA?

## III. CONCLUSIONS OF LAW

### A. AmSouth

As discussed above, AmSouth filed three claims in this Chapter 13 case. The filing of those claims had a significant impact on the debtor's right to a jury trial before this Court. This Court has considered three lines of cases in that regard. Those are: (1) the "Claims Adjudication Process"; (2) "Submission to a Court of Equitable Jurisdiction"; and (3) "Combination Theory."[2]

### 1. "Claims Adjudication Process"

The "Claims Adjudication Process" theory requires a creditor to have filed a proof of claim, or its functional equivalent, and that the debtor's claims be interconnected to that creditor's claim.

Under the "Claims Adjudication Process" theory, Courts have universally held that a debtor is not entitled to a jury trial in an adversary proceeding filed in the bankruptcy court against a creditor who has filed a proof of claim, or its functional equivalent, such as a dischargeability complaint, the removal of an action pending against the debtor in a nonbankruptcy forum to the bankruptcy court, an administrative expense request, or a counterclaim against the debtor in an action commenced by the latter. See Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3rd Cir.1994) (request for administrative expense); Longo v. McLaren (In re McLaren), 3 F.3d 958 (6th Cir.1993)(dischargeability complaint); N.I.S. Corp. v. Hallahan (In re Hallahan), 936 F.2d 1496 (7th Cir.1991)(dischargeability complaint and proof of claim); Tanzi v. Shulkin, Adversary No. 04-4166, 2006 WL 2927660 (W.D. Wash., Oct. 12, 2006)(request for administrative expense); Smith-Lyon v. Trustmark National Bank (In re Gunsmith's Inc.), 271 B.R. 487 (S.D. Miss. 2000)(proof of claim); Dimitri v. Granville Semmes, 2000 WL 1843495 (E.D. La., Dec. 14, 2000)(proof of claim); Brownlee v. Joe Cotton Ford, Inc., 1999 WL 65053 (N.D. Ill., Feb. 5, 1999)(unclear from opinion); Jefferson Nat'l Bank v. I.A. Durbin, Inc. (In re I.A. Durbin, Inc.), 62 B.R. 139 (S.D. Fla. 1986)(removed case); Turner v. Bolduc (In re Crowe Rope Industries, LLC), 307 B.R. 1 (Bankr. D. Me.

---

[2] For another discussion of a debtor's right to a jury trial, see this Court's opinion in Sharpe v. Wells Fargo Home Mortgage (In re Sharpe), Case No. 03-04644, 2007 WL 1876368, (Bankr. N.D. Ala. Jun 27, 2007) where this Court considered whether the debtor was entitled to a jury trial in a wrongful foreclosure action and related causes of action for breach of contract, conversion, trespass, violation of the automatic stay, estoppel, fraud, unjust enrichment, and breach of fiduciary duty.

5

2004)(proof of claim); Charlotte Commercial Group, Inc. v. Fleet Nat'l Bank (In re Charlotte Commercial Group, Inc.), 288 B.R. 715 (Bankr. M.D.N.C. 2003)(proof of claim); W.S.C., Inc. v. The Home Depot Inc. (In re W.S.C., Inc.), 286 B.R. 321 (Bankr. M.D. Tenn. 2002)(proof of claim); Heater v. Household Realty Corp. (In re Heater), 261 B.R. 145 (Bankr. W.D. Pa. 2001)(no asset case, no proof of claim filed); Hutchins v. Fordyce Bank & Trust Co. (In re Hutchins), 211 B.R. 322 (Bankr. E.D. Ark. 1997)(proof of claim); Aaron Gleich, Inc. v. Housing Authority of the City of New Haven (In re Aaron Gleich, Inc.), 200 B.R. 464 (Bankr. D. Me. 1996)(proof of claim); Crews v. Lyons (In re Lyons), 200 B.R. 459 (Bankr. S.D. Ga. 1994)(unclear from opinion); Romar Int'l Georgia, Inc. v. Southtrust Bank of Alabama, N.A. (In re Romar Int'l Georgia, Inc.), 198 B.R. 407 (Bankr. M.D. Ga. 1996)(proof of claim); Auto Imports, Inc. v. Verres Financial Corp. (In re Auto Imports, Inc.), 162 B.R. 70 (Bankr. D.N.H. 1993)(proof of claim); Martinson v. Towe (In re Towe), 151 B.R. 262 (Bankr. D. Mont. 1993)(proof of claim); Frost, Inc. v. Miller, Canfield, Paddock & Stone, P.C. (In re Frost), 145 B.R. 878 (Bankr. W.D. Mich. 1992)(proof of claim); Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.), 132 B.R. 979 (Bankr. S.D. Ga. 1991)(proof of claim); Longo v. McLaren (In re McLaren), 129 B.R. 480 (Bankr. N.D. Ohio 1991)(dischargeability complaints); Leslie Salt Co. v. Marshland Development, Inc. (In re Marshland Development, Inc.), 129 B.R. 626 (Bankr. N.D. Cal. 1991)(removed case); Splash v. Irvine Co. (In re Lion Country Safari, Inc.), 124 B.R. 566 (Bankr. C.D. Cal. 1991)(removed case); Wes-Mar Group, Inc. v. Womack (In re Malkove & Womack, Inc.), 122 B.R. 444 (Bankr. N.D. Ala. 1990)(proof of claim); Kroh Bros. Dev. Co. v. Bazan (In re Kroh Bros. Dev. Co.), 91 B.R. 889 (Bankr. W.D. Mo. 1988)(proof of claim); Pro Machine, Inc. v. Hardinge Bros., Inc. (In re Pro Machine, Inc.), 87 B.R. 998 (Bankr. D. Minn. 1988)(proof of claim); Taubman Western Assocs., No. 2 v. Beugen (In re Beugen), 81 B.R. 994 (Bankr. N.D. Cal. 1988)(removed case); In re Manning, 71 B.R. 981 (Bankr. N.D. Ala. 1987)(proof of claim).

Many of the courts reaching that conclusion relied on the United States Supreme Court's decisions in Katchen v. Landy, 382 U.S. 323 (1966), Granfinanciera v. Nordberg, 492 U.S. 33 (1989) and Langenkamp v. Culp, 498 U.S. 42 (1990). Those courts reasoned that since the bankruptcy claims adjudication process is equitable in nature, the legal claims of the creditor, (by filing a proof of claim), and those of the debtor, (by submitting a lawsuit which is interconnected with the creditor's claim for resolution by the bankruptcy court), are transformed into an equitable dispute over a share of the bankruptcy estate, to which there is no right to a jury trial. So, when a debtor files a lawsuit involving issues which are interrelated to the allowance of the creditor's claim, that is, where the merits of that lawsuit must be decided before the creditor's claim can be resolved, that lawsuit becomes part of the claims allowance process. Hence, neither the debtor nor the creditor has a right to a jury trial. Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d at 1252-1253; W.S.C., Inc. v. The Home Depot Inc. (In re W.S.C., Inc.), 286 B.R. at 329; Heater v. Household Realty Corp. (In re Heater), 261 B.R. at 150; Aaron Gleich, Inc. v. Housing Authority of the City of New Haven (In re Aaron Gleich, Inc.), 200 B.R. at 466-467; Romar Int'l Georgia, Inc. v. Southtrust Bank of Alabama, N.A. (In re Romar Int'l Georgia, Inc.), 198 B.R. at 411-412; Frost, Inc. v. Miller, Canfield, Paddock & Stone, P.C. (In re Frost), 145 B.R. at 882-883;

6

Leslie Salt Co. v. Marshland Development, Inc. (In re Marshland Development, Inc.), 129 B.R. at 630-631; Longo v. McLaren (In re McLaren), 129 B.R. at 483; Pro Machine, Inc. v. Hardinge Bros., Inc. (In re Pro Machine, Inc.), 87 B.R. at 1003-1004; Taubman Western Assocs., No. 2 v. Beugen (In re Beugen), 81 B.R. at 997-999.

### 2. "Submission to a Court of Equitable Jurisdiction"

The "Submission to a Court of Equitable Jurisdiction" theory, does not, by definition, require the filing of a proof of claim by a creditor or that the debtor's claims be interconnected to a creditor's claim, although those elements were present in the cases cited below. However, court's applying this theory do reach the same result as the "Claims Adjudication Process" cases, but through different reasoning. That reasoning is that the Seventh Amendment accords no right to a jury trial to a litigant who submits his cause of action to a court of equitable jurisdiction for resolution. Specifically, the Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. The Supreme Court of the United States has consistently interpreted the phrase "Suits at common law" to refer to, "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered...." Parsons v. Bedford, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989).

Consequently, a debtor who submits a legal claim to the bankruptcy court is not entitled to a jury trial on that claim. Longo v. McLaren (In re McLaren), 3 F.3d at 961; N.I.S. Corp. v. Hallahan (In re Hallahan), 936 F.2d at 1505; Dimitri v. Granville Semmes, 2000 WL 1843495, *2; Brownlee v. Joe Cotton Ford, Inc., 1999 WL 65053, *3; Hutchins v. Fordyce Bank & Trust Co. (In re Hutchins), 211 B.R. at 324; Crews v. Lyons (In re Lyons), 200 B.R. at 460; Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.), 132 B.R. at 980-981. See also In re Kridlow, 1999 WL 97939, *5 (Bankr. E.D. Pa., Feb. 19, 1999)(debtor was not entitled to jury trial in action brought in bankruptcy court against noncreditor insurance company for bad faith refusal of coverage); Mid American Concrete Construction, Inc. v. Sears Roebuck & Co., 1993 WL 177140, *3 (Bankr. N.D. Ill., May 6, 1993)(debtor not entitled to jury trial in action brought in bankruptcy court against non-creditor third party).

### 3. "Combination Theory"

The two theories discussed above are not necessarily antagonistic or exclusive. A third line of cases, referred to as the "Combination Theory" cases illustrate that point. These cases discuss a mix of the other two theories.

Court's applying a "Combination Theory" have held that a debtor is not entitled to a jury trial where he has submitted his action to the equitable jurisdiction of the bankruptcy court for resolution and the action implicates the claims allowance process.

7

Case 06-40016-BGC    Doc 76    Filed 09/26/07    Entered 09/26/07 10:25:36    Desc Main
Document    Page 7 of 14

See Dunmore v. United States, 358 F.3d 1107, 1116 (9th Cir. 2004)(under the circumstances, debtor did not waive right to jury trial on tax refund claims against United States by seeking the trustee's abandonment of the refund claims, however, "If [the debtor] were to submit himself to the bankruptcy court's equity jurisdiction, he would waive any right to a jury trial for the resolution of those disputes 'vital to the bankruptcy process,' including disputes that are part of the claims-allowance process and the hierarchical reordering of his creditors' claims."). Id. (parenthetical added).

See also Tanzi v. Shulkin, 2006 WL 2927660 at *4-5 ("The Bankruptcy Court properly struck the Debtors' jury demand. The legal malpractice claim implicated the claims allowance process and the Debtors submitted the claim to the Bankruptcy Court's equitable claims allowance process."); Parsons v. United States (In re Parsons), 153 B.R. at 588:

> The Parsonses voluntarily filed an adversary complaint in the bankruptcy court. Moreover, because the Parsonses asked the bankruptcy court to determine the dischargeability of the United States tax claims and James Parsons's liability for the tax penalty, the Parsonses' adversary complaint is integral to the claims allowance process. Accordingly, this court finds that the Parsonses submitted their adversary action to the equitable jurisdiction of the bankruptcy court, and thus, had no right to a jury trial.

Id.; Charlotte Commercial Group, Inc. v. Fleet Nat'l Bank (In re Charlotte Commercial Group, Inc.), 288 B.R. at 720:

> Rather than defend itself in the Pennsylvania action, CCG clearly sought out the protection of the bankruptcy court and chose an equitable forum in which to assert its claims against Fleet. Furthermore, CCG's cause of action against Fleet is integrally related to Fleet's proof of claim.... Because CCG voluntarily filed a bankruptcy petition and commenced an adversary proceeding in bankruptcy court that is patently related to Fleet's proof of claim, CCG is not entitled to a jury trial.

Id.; Auto Imports, Inc. v. Verres Financial Corp. (In re Auto Imports, Inc.), 162 B.R. at 72:

> By filing for bankruptcy protection, the Debtor submits itself to the Court's equitable determination of the claims against it. By voluntarily submitting itself to the Court's equitable power in the determination of claims against the bankruptcy estate, the Debtor thereby waives its jury trial right on the resolution of those claims.

Id. (citations omitted); Martinson v. Towe (In re Towe), 151 B.R. at 264 ("[S]ince creditors such as the I.R.S. lose a jury trial right upon filing of a Proof of Claim, ... so does the Debtor, Towe, upon the filing of the bankruptcy petition."); Splash v. Irvine Co. (In re Lion Country Safari, Inc.), 124 B.R. at 571-572:

8

> The lesson there, is that a court faced with the question of entitlement to trial by jury in the bankruptcy court, at least in so far as it is a creditor's right at stake, should examine first the question of whether the one who would invoke the right has submitted itself to the equitable jurisdiction of that court. If the answer to that question is affirmative, the next inquiry is whether the action in which the right would be exercised 'arises as part of the process of allowance and disallowance of claims' or is otherwise "integral to the restructuring of debtor-creditor relations." I can find no justification in law or reason why the same analytical process should not be applied to the determination of a debtor's right to trial by jury in actions before this court.

Id.; Wes-Mar Group, Inc. v. Womack (In re Malkove & Womack, Inc.), 122 B.R. at 445

> By electing to be an active 'player' in this civil action and having removed it to the bankruptcy court, the debtor has, in effect, waived the stay and has treated the civil action as including or encompassing the core proceedings described in 28 U.S.C. § 157(b)(2)(B) and (C)). Insofar as concerns only the plaintiff and the debtor, this proceeding has become a core proceeding for allowance or disallowance of the plaintiff's claim against the debtor and the counterclaims by the estate against an entity filing a claim against the estate. To date, the debtor confesses an indebtedness of $111,274.51, and the plaintiff confesses an offset of $5,335.20; but, the dispute continues as to the aspects of the debtor's counterclaim which relate to a "walk-in-cooler" which the plaintiff took from the debtor on or about January 29, 1990. The debtor demanded a jury trial of these aspects of the counterclaim but has no right to a jury trial.

Id.; In re Manning, 71 B.R. at 987:

> While the debtor's counterclaim is related to the loans made to him by the bank, it did not arise out of the transactions whereby the loans were made. On the contrary, the counterclaim is alleged to have arisen from a fiduciary and confidential relationship which arose thereafter. The debtor then may be said to have elected to assert his counterclaim in equity's realm, where trial is by the chancellor or court rather than by jury. In this sense, the debtor waived any right to trial by a jury of the demand couched in the counterclaim.

Id.

### B. The Request for a Jury Trial against AmSouth

AmSouth filed three proofs of claim in Mrs. Andrews' bankruptcy case. The focal point of the lawsuit filed by Mrs. Andrews is the allowance or disallowance of what

9

Case 06-40016-BGC    Doc 76    Filed 09/26/07    Entered 09/26/07 10:25:36    Desc Main
Document      Page 9 of 14

remained of AmSouth's claim when Mr. Andrews died. In fact, the primary theory of the lawsuit is that AmSouth breached a legal duty to apply insurance proceeds, (which Mrs. Andrews allegedly became entitled to when Mr. Andrews died) to the full satisfaction of what remained of its claim. Mrs. Andrews' base theory is that AmSouth breached its duty to satisfy its claim upon Mr. Andrews' death, ostensibly through the application of credit insurance for which the Andrews had allegedly paid AmSouth. All other theories in her complaint hinge on that theory. Indeed, Mrs. Andrews admitted in her complaint that her lawsuit constitutes, "a counterclaim based on the claim filed by the defendant, AmSouth Bank," (<u>Amended and Recast Complaint</u> at 1, ¶ 2 (Proceeding No. 61, A. P. No. 06-40016). That alone makes the complaint an integral part of the claims allowance process. Consequently, regardless of which analytical theory applied, Mrs. Andrews is not entitled to a jury trial on her claims against AmSouth.

In contrast, Mrs. Andrews contends that because she did not file an objection to AmSouth's claim before confirmation, her action cannot possibly constitute an objection to claim. She argues that she does not technically object to the allowance of AmSouth's claim. She relies on the fact that she did not object to the claim prior to confirmation and continued to pay the claim following Mr. Andrews' death. In contrast, the <u>compensatory damages</u> which Mrs. Andrews now seeks constitute the same relief to which she would have been entitled had she objected to the continued payment of AmSouth's claim, or if she had sought to modify her plan to eliminate further payments on that claim immediately after her husband died. The only difference would be that if she had acted before, she could have avoided having to make those payments rather than having to recoup them from AmSouth now.

Attempting to do now what could have been done immediately after Mr. Andrews died does not change the nature of the action. The action is still one to avoid the payment of what remained of AmSouth's claim at that point. A simple objection to claim timely brought after Mr. Andrews' death could have resulted in the relief which Mrs. Andrews' asserts in her complaint, that is – she, "was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." <u>Id</u>. (passim).

Application of section 502(j) of the Bankruptcy Code confirms these conclusions. Section 502(j) specifically provides for reconsidering an allowed claim, and disallowing that claim, based on the equities of the case. That section reads:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's

10

Case 06-40016-BGC    Doc 76    Filed 09/26/07    Entered 09/26/07 10:25:36    Desc Main
Document    Page 10 of 14

allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502(j).

Therefore, despite her protests to the contrary, Mrs. Andrews' lawsuit constitutes an objection to AmSouth's claim pursuant to section 502(j). Satisfaction of a claim from sources other than the payments being made by a debtor under a Chapter 13 plan is always grounds for reconsidering, and disallowing, a previously allowed claim.

How Mrs. Andrews elects to label her present lawsuit, or the fact that she elected to make additional payments to AmSouth before filing it, does not change the nature of the action. And whether the present suit is technically an "objection to claim" or not, it is, by Mrs. Andrews' own admission, in page 1, paragraph 2 of her <u>Amended and Recast Complaint</u>, a counterclaim to AmSouth's claim, which places it squarely in the "claims allowance process." That precludes any argument that she is entitled to a jury trial against AmSouth in this case.

But even if it does not, the Court finds:

1. Mrs. Andrews is not entitled to a jury trail against AmSouth under the "Claims Adjudication Process" because Mrs. Andrews' lawsuit involves issues which are interrelated to the allowance of AmSouth's claim because the merits of that lawsuit must be decided before AmSouth's claim can be resolved;

2. Mrs. Andrews is not entitled to a jury trial against AmSouth under the "Submission to a Court of Equitable Jurisdiction" theory because she submitted her legal cause of action for resolution by a court of equitable jurisdiction for resolution; and

3. Mrs. Andrews is not entitled to a jury trial against AmSouth under the "Combination Theory" because she submitted her cause of action to the equitable jurisdiction of the bankruptcy court <u>and</u> that action implicates the claims allowance process.

### C. LICOA

The situation involving LICOA is a bit more problematic. LICOA is not a creditor of the debtor. It did not file a proof of claim in Mrs. Andrews' bankruptcy case.

11

Under similar circumstances, court have reached different results on the issue of whether a debtor is entitled to a jury trial against a non-creditor defendant. A few have allowed a jury trial. In re Jensen, 946 F.2d 369, 374 (5th Cir. 1991); W.S.C., Inc. v. The Home Depot Inc. (In re W.S.C., Inc.), 286 B.R. 321, 332 (Bankr. M.D. Tenn. 2002).

A few have not allowed a jury trial. In re Kridlow, 1999 WL 97939, *5 (Bankr. E.D. Pa., Feb. 19, 1999); Hutchins v. Fordyce Bank & Trust Co. (In re Hutchins), 211 B.R. 322, 324 (Bankr. E.D. Ark. 1997); Mid American Concrete Construction, Inc. v. Sears Roebuck & Co., 1993 WL 177140, *3 (Bankr. N.D. Ill., May 6, 1993). See also Dunmore v. United States, 358 F.3d 1107, 1116 (9th Cir. 2004)(under the circumstances, debtor did not waive right to jury trial on tax refund claims against United States by seeking the trustee's abandonment of the refund claims, however, "[i]f [the debtor] were to submit himself to the bankruptcy court's equity jurisdiction, he would waive any right to a jury trial for the resolution of those disputes 'vital to the bankruptcy process,' including disputes that are part of the claims-allowance process and the hierarchical reordering of his creditors' claims.") (parenthetical added).

As might be expected, the courts allowing a jury trial relied on the "Claims Allowance Process" theory, and those not allowing a jury trial relied on the "Submission to a Court of Equitable Jurisdiction" theory. It is significant however that the courts allowing a jury trial emphasized that under the particular circumstances before them, the debtor's claims against the non-creditor defendant were not connected to or interrelated to the allowance or disallowance of a claim filed by any creditor. The court in Jenson wrote:

> As in Granfinanciera, the debtors' claims do not here "arise as part of the process of allowance and disallowance of claims." 492 U.S. at 58, 109 S.Ct. at 2799. Nor are they "integral to the restructuring of debtor-creditor relations." Id. Rather they are essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate. Under these circumstances, we are unable to conclude that the debtor's petition for bankruptcy subjected his claims to the equitable jurisdiction of the bankruptcy court.

In re Jensen, 946 F.2d at 374. And the court in W.S.C. wrote,

> With respect to these other defendants, the Debtor's actions are brought to augment the bankruptcy estate and are in no way related-integrally or otherwise-to the hierarchal ordering of claims against this estate.
>
> ....
>
> The logic of the alternative holding in Hallahan breaks down when the debtor demands a jury in a private right of action that does not engage the process of allowing or disallowing claims against the bankruptcy estate.

12

W.S.C., Inc. v. The Home Depot Inc. (In re W.S.C., Inc.), 286 B.R. at 332.

It is not apparent that the courts in Jensen and W.S.C., Inc. would not have reached the opposite conclusion if the debtors' claims against the non-creditors had been interconnected with a claim filed by a creditor. Otherwise, why would each have discussed and emphasized the non-interrelatedness of the debtor's claim to any claim filed by a creditor? Thus, it cannot be concluded from those two cases that the "Claims Allowance Process" theory necessarily requires that the debtor's lawsuit be against the actual creditor filing the claim connected with the debtor's claim.

Analysis under the "Submission to a Court of Equitable Jurisdiction" theory however, produces an unqualified result. Application of that theory emphatically mandates denial of Mrs. Andrews' request for a jury trial against LICOA. Since she submitted her claims against LICOA to the equitable jurisdiction of the bankruptcy court, the Seventh Amendment accords her no right to a jury trial on those claims.

The same result is reached when applying the "Claims Allowance Process" theory. Mrs. Andrews' claims against LICOA integrally involve and effect the "Claims Allowance Process." Again, the insurance which LICOA was purportedly obligated to provide the Andrews was credit life insurance, designed and intended to specifically pay the balance of AmSouth's debt upon the death of Mr. Andrews. The basic legal duty owed by LICOA to Mrs. Andrews, according to her complaint, was to pay off AmSouth's debt if Mr. Andrews died. It was not obligated to pay anything directly to her. And all of the claims in Mrs. Andrews' complaint against LICOA are based on the primary, basic contention that LICOA wrongfully failed to pay off the balance owed on AmSouth's debt when Mr. Andrews died. Therefore, those claims against LICOA must be resolved before the remainder of AmSouth's claim can be disallowed, and before Mrs. Andrews can recoup the payments which she made, allegedly unnecessarily, to AmSouth subsequent to her husband's death. And certainly, the claims against LICOA must be resolved before it can be determined which defendant, if either, owes her for those payments.

Based on the above, ths Court must conclude that the payment of AmSouth's claim, and consequent disallowance vel non of what remained of the same following Mr. Andrews' death, is the focal point of Mrs. Andrews' claims against LICOA. Indeed, that point is conceded by Mrs. Andrews in her complaint by her assertion that her entire lawsuit, including the claims against LICOA, constitutes, "a counterclaim based on the claim filed by the defendant, AmSouth Bank." Amended and Recast Complaint at 1 ¶ 2 (Proceeding No. 61, A.P. No. 06-40016) (passim).

But even if it is not, the Court finds, because the debtor's lawsuit against LICOA is inextricably interwoven with AmSouth's claim, Mrs. Andrews is not entitled to a jury trial in the present case on her claims against LICOA, in accordance with both the "Claims Allowance Process" theory and the "Combination Theory".

13

## IV. Conclusion

Based on the foregoing, the Court concludes that the plaintiff is not entitled to a jury trial on her claims against either AmSouth or LICOA.

A separate order will be entered in conformity with this memorandum opinion.

Dated: September 26, 2007

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm

14