IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| William F. Andrews and | ) | Case No.: 01-42562-JJR-13 |
| Virginia L. Andrews, | ) | |
| | ) | |
| Debtors. | ) | |
| | | |
| Virginia L. Andrews, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 06-40016-BGC |
| | ) | |
| AmSouth Bank; Life Insurance | ) | |
| Company of Alabama, | ) | |
| | ) | |
| Defendants. | ) | |

This Memorandum Opinion was not submitted by the Court for publication.

**Memorandum Opinion on
Motion to Allow Cross-claim**

The matters before the Court are:

1. The Motion to Allow Filing of Cross Claim by Life Insurance Company of Alabama Against Co-Defendant AmSouth Bank, with attached Cross Claim of Defendant Life Insurance Company of Alabama Against Defendant AmSouth Bank, filed on March 22, 2007 by the defendant, Life Insurance Company of Alabama (Proceeding No. 66); and

2. The Opposition To Motion To Amend Answer To Add Cross-Claim filed on April 4, 2007, by the defendant AmSouth Bank (Proceeding No. 68).

After notice, a hearing was held on May 5, 2007. Appearing were: Harvey B. Campbell, Jr. and Lloyd W. Gathings, attorneys for the plaintiff; James H. Greer and Stewart M. Cox, attorneys for AmSouth Bank (AmSouth); Robert D. McWhorter, Jr., the attorney for Life Insurance Company of Alabama (LICOA); and Linda B. Gore, the standing Chapter 13 trustee. The matters were submitted on briefs, stipulations, arguments of counsel, and the records in this case and adversary proceeding.

As discussed below, the Court concludes that LICOA should be permitted to file and prosecute its cross-claim against AmSouth.

## I. Findings of Fact

### A. The Debtor's Petition and Plan

The debtors filed a joint Chapter 13 petition on July 13, 2001. Along with the petition, they filed a proposed Chapter 13 plan. On February 14, 2002, they filed a modification to that proposed plan. The plan as modified was confirmed on February 25, 2002.

The confirmed plan required the Andrews to make monthly payments of $210.00 to the Chapter 13 trustee for 60 months. After receiving those funds, the trustee was ordered to disburse those funds: (1) first to administrative expense holders; (2) second to other priority claimants, if any; (3) third in satisfaction of secured arrearage claims; and (4) fourth to creditors holding unsecured claims.

In regard to one secured creditor, when the debtors' filed their petition, they owned real property located in Jacksonville, Alabama. That property was encumbered by a mortgage held by AmSouth. The confirmed plan required the debtors to make their regular monthly mortgage payments on that debt directly to AmSouth.

### B. AmSouth's Proofs of Claim

AmSouth filed three proofs of claim in this case relating to its mortgage claim. Those proofs of claim represent that AmSouth was owed $17,177.38 on the principal amount of its debt as of January 7, 2002 (claim no. 11); $3,859.28 for prepetition arrears as of January 7, 2002 (claim no. 11); and $1,274.44 for postpetition arrears as of January 25, 2001 (claim no.12).[1]

### C. Mr. Andrews' Death

During the course of this case, the parties' attorneys informed the Court that Mr. Andrews died on October 30, 2003.

### D. Mrs. Andrews' Complaint
### Against AmSouth and LICOA

On January 13, 2006, Mrs. Andrews filed the pending adversary proceeding. In her complaint Mrs. Andrews alleged that: (1) she acquired credit life insurance through

---

[1] The third claim, claim number 10, was filed on November 30, 2001, for prepetition arrears of $1,300. The Court assumes that amount was included in the $3,859 requested through claim number 11 filed on January 11, 2002.

2

AmSouth which insurance was designed to pay off the balance of the mortgage debt if Mr. Andrews died; (2) AmSouth purportedly contracted with LICOA to provide that insurance; (3) subsequent to Mr. Andrews' death, AmSouth refused to acknowledge satisfaction in full of the mortgage debt, contending that the insurance had lapsed because of nonpayment of premiums; and (4) LICOA refused to pay off the remainder of the debt which she owed to AmSouth.

In Count I of her amended complaint, Mrs. Andrews alleges that LICOA, "breached its insurance contract with... [her]." Amended and Recast Complaint at 4, ¶ 21 (Proceeding No. 61, A.P. No. 06-40016) (parenthetical added). She concludes that as a proximate result of that breach, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." Id. at 4-5, ¶ 22 (parenthetical added).

In Count II of her amended complaint, Mrs. Andrews alleges that she, "made a timely claim pursuant to the terms of the credit life insurance policy for the amount of the indebtedness remaining unpaid at the time of Mr. Andrews' death." Amended and Recast Complaint at 5, ¶ 24 (Proceeding No. 61, A.P. No. 06-40016). She contends that LICOA denied that claim, "in bad faith...." Id. She concludes that as a proximate result of LICOA's bad faith, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." Id. at 6, ¶ 25 (parenthetical added).

In Count III of her amended complaint, Mrs. Andrews alleges that LICOA "negligently or wantonly hired and/or supervised its agents... resulting in the wrongful conduct of its agents as set forth in Count IV and Count V." Amended and Recast Complaint, at 6-7, ¶ 27 (Proceeding No. 61, A.P. No. 06-40016). She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid...." Id. at 7, ¶ 28 (parenthetical added).

In Count IV of her amended complaint, Mrs. Andrews alleges that AmSouth is, "guilty of fraud, fraudulent suppression, and deceit in the sale and/or servicing of the insurance policy... [when it represented to her], that the premiums paid by Plaintiff were paid for a credit life insurance policy... which would pay the remaining unpaid indebtedness on Plaintiff's mortgage loan in the event of the death of William F. Andrews...." Amended and Recast Complaint at 8, ¶ 30 (Proceeding No. 61, A.P. No. 06-40016) (parenthetical added). She also alleges that the defendant failed, "to disclose to Plaintiff that the premiums, although paid, were not used to keep a credit life insurance policy in force and effect...." Id. She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid..." Id. at 9, ¶ 34 (parenthetical added).

In Count V of her amended complaint, Mrs. Andrews alleges that AmSouth, "continued to negligently or wantonly collect credit life insurance premiums from the

plaintiff for a period of years after the credit life insurance policy had allegedly been terminated due to a 60 day delay in payment." Amended and Recast Complaint at 9, ¶ 36 (Proceeding No. 61, A.P. No. 06-40016). She concludes that as a proximate result of that conduct, "[she] was denied the benefits due to her on said life insurance policy in that the debt that was insured has not been paid ...." Id. at 10, ¶ 37 (parenthetical added).

It is apparent from the complaint that the focal point of Mrs. Andrews' lawsuit is that AmSouth and LICOA wrongfully failed to satisfy, from the credit life insurance policy and its proceeds, the remainder of AmSouth's claim when Mr. Andrews died.

### E. LICOA's Motion for Leave to File a Cross-claim against AmSouth

On March 22, 2007, LICOA filed its Motion to Allow Filing of Cross Claim by Life Insurance Company of Alabama Against Co-Defendant AmSouth Bank (Proceeding No. 66, A.P. No. 06-40016). LICOA attached its Cross Claim of Defendant Life Insurance Company of Alabama Against Defendant AmSouth Bank to that motion. Paraphrased below are LICOA's contentions.

a. In February of 1992, when the Andrews obtained their mortgage loan from AmSouth and signed up for the credit life insurance, LICOA was party to a business agreement with AmSouth whereby LICOA would offer credit life insurance to its customers and LICOA would underwrite the coverage.

b. In violation of that agreement, AmSouth completed a certificate of insurance on Mr. Andrews but failed to remit a copy to LICOA.

c. In violation of that agreement, in late 1996 or early 1997, AmSouth stopped sending monthly reports about Mr. Andrews' policy and stopped remitting the premiums collected on the policy.

d. Without notifying LICOA, AmSouth contracted with a different insurance company to underwrite its existing credit life policies and began remitting the premiums collected on those policies to that new company.

e. When it switched to the new insurance company, AmSouth failed to inform LICOA that the certificates of insurance which LICOA had underwritten remained in force or that premiums being collected on those policies were being remitted to the new company.

f. In November 1997, Mr. Andrews' policy automatically terminated as a result of a failure to make the payments due on their mortgage note for a period of 61 days.

4

g. In violation of its agreement with LICOA, AmSouth failed to monitor Mr. Andrews' account for events of policy termination, failed to notify the Andrews that their policy had been terminated, failed to notify LICOA that the Andrews were 61 days behind on their mortgage payments, and continued to collect insurance premiums from the Andrews after their policy had terminated.

h. In doing, or failing to do, those things, AmSouth is guilty of breach of contract, fraud, and breach of fiduciary duty to LICOA.

i. If Mrs. Andrews, "is entitled to recover on her complaint against [LICOA] ... such recovery would be the result of the wrongful conduct of AmSouth Bank, which would entitle [LICOA] to indemnification and contribution for any liability [LICOA] may incur to [Mrs. Andrews]." Id. at 2, ¶ 4 (parenthetical added).

### F. AmSouth's Objection

In its objection to LICOA's motion for permission to file its cross-claim, AmSouth admits that LICOA's, "cross-claims deal with the very issue at the heart of plaintiffs claims against LICOA and AmSouth, that is whether there is credit insurance that should have extinguished plaintiff's loan indebtedness." Opposition To Motion To Amend Answer To Add Cross-Claim at 3, ¶ 5 (Proceeding No. 68, A.P. No. 06-40016).

In its Opposition To Motion To Amend Answer To Add Cross-Claim, AmSouth contends that LICOA should not be permitted to file its cross-claim. Paraphrased from that pleading, AmSouth's contentions are these:

a. LICOA's cross-claim is untimely because LICOA knew of the facts and circumstances on which that claim was based when it filed its answer and therefore LICOA could have asserted its cross claim at that time.

b. AmSouth would be prejudiced by LICOA's cross-claim because the filing of it would delay the trial of this matter and, "cause discovery to be re-opened" Id. at 3, ¶ 7.

c. Allowing LICOA to file and prosecute its cross-claim would be futile because it is barred by the applicable statute of limitations.[2]

---

[2] AmSouth also objects to LICOA's cross-claim on the grounds that LICOA has requested a jury trial on those claims and that a jury trial is not otherwise warranted in this case. That is no longer an issue since the Court, this date, has entered an order denying Mrs. Andrews' jury demand on her claims against both AmSouth and LICOA, and because in its motion to strike the plaintiff's jury demand, LICOA agreed to withdraw its jury demand on its cross-claims in the event Mrs. Andrews' demand for a jury trial was denied.

5

### G. The Procedural Status of this Case

The Court's records of this proceeding indicate:

a. LICOA filed its motion for leave to file its cross-claim about 15 months after Mrs. Andrews filed her original complaint and about three weeks after Mrs. Andrews filed her amended complaint.

b. While the parties have apparently engaged in substantial discovery, none other than AmSouth has suggested that discovery is complete. No discovery deadline has been established.

c. This case is not set for trial. A pretrial conference not been held. A scheduling order has not been entered.

## II. Issue

Is LICOA entitled to file a cross-claim against AmSouth?

## III. Conclusions of Law

Rule 13(g) of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings by Rule 7013 of the Federal Rules of Bankruptcy Procedure, provides:

> A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g).

### A. General Rules of Construction

Writing for the United States Supreme Court in Foman v. Davis, 371 U.S. 178 (1962), Justice Arthur J. Goldberg recognized, "Rule 15(a) [of the Federal Rules of Civil Procedure] declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." Id. at 182 (parenthetical added) (citation omitted). And that, "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" Id.

6

The same sentiment was expressed in this Circuit over fifty years ago. Writing for the Court of Appeals of the Fifth Circuit, Circuit Judge John R. Brown stated, "That [the filing of a cross claim pursuant to Fed. R. Civ. P. 13(g)] comes after judgment would not bar action since Rule 15(b) gives substantial latitude to amend even then." Indemnity Ins. Co. of North America v. Browning-Ferris Machinery Co., 227 F.2d 804, 809 (5th Cir. 1955) (parenthetical added). Judge Brown added, "A court should always endeavor, "to infuse vitality in Rule 15." Id.

That principle was acknowledged by the current circuit court in Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036 (11th Cir. 2006). The per curium opinion reads, "'The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint.'" Id. at 1041 (quoting Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2001)).

It appears that the same understanding should govern in regard to motions filed under Rule 13(g).[3] The court in State Teacher's Retirement Board v. Fluor Corp., 589 F. Supp. 1268 (S.D.N.Y. 1984) wrote, "It should also be noted that Rule 13(g), Fed.R.Civ.P. ... is construed liberally so as 'to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum procedural steps.'" Id. at 1269-1270 (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1431 at 161 (1971). And the court in "Donovan v. Robbins, 588 F. Supp. 1268, 1273 (N.D. Ill. 1984), wrote, "Rule 13(g) was intended to promote the expeditious and economical adjudication of an entire subject matter arising from the same set of facts within a single action. It follows that cross-claims filed under Rule 13(g) should be considered at the same time so as to do justice to the rationale behind the rule.

Of course, when considering such motions this court, "'must consider whether the amendment, if allowed, would prejudice the party opposing it.'" Palumbo v. Roberti, 834 F. Supp. 46, 54 (D. Mass. 1993)(quoting In re Cessna Distributorship Antitrust Litigation, 532 F.2d 64, 68 (8th Cir.1976)). But at the same time, this Court recognizes that, "Neither the federal rules nor the rules of this court impose any limitation on the time when cross-claims may be filed." Fogel v. United Gas Imp., Co. 32 F.R.D. 202, 203 (E.D. Pa. 1963). With that in mind, it appears most important to this Court that, "Rules 13 and 14 are both intended to avoid circuity of action and to dispose of the

---

[3] "[I]n exercising this court's discretion on a motion for leave to amend an answer [to add a cross-claim], this court is guided by the underlying purpose of Rule 15 which is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" Id. (quoting Bob Marshall Alliance v. Lujan, 804 F. Supp. 1292, 1298 (D. Mont.1992) (parenthetical added). Palumbo v. Roberti, 834 F.Supp. 46, 54 (D.Mass. 1993). In Bob Marshall the party being addressed sought to amend an answer to file a cross-claim.

entire subject matter arising from one set of facts in one action, thus administering complete and even handed justice expeditiously and economically. They are remedial and should be liberally construed." Blair v. Cleveland Twist Drill Co., 197 F.2d 842, 845 (7th Cir. 1952).

## B. AmSouth's Opposition

### 1. General Considerations

AmSouth contends that LICOA's motion for leave to file a cross-claim should be denied because of "undue delay" in bringing that motion. In support of that contention, it argues that over a year passed after the original complaint was filed in this case. In addition, AmSouth argues that LICOA knew the facts and circumstances upon which its cross-claim is based when it filed its answer to that original complaint and could have asserted the cross-claim at that time.

The Federal Rules of Civil Procedure do not establish a deadline for filing cross-claims and do not provide any guidance for determining whether, and under what circumstances, a delay in filing a cross-claim must be considered "undue," that is, with the exception of Rule 15(a)'s admonition that leave to amend "shall be freely given when justice so requires." Id. Therefore, the determination of whether there has been "undue delay" in the filing of a cross-claim is necessarily an inexact process and certainly fact-specific.

In this specific case, LICOA filed its motion for leave to file a cross-claim against AmSouth about 15 months after Mrs. Andrews filed her original complaint and about 3 weeks after she filed her amended complaint. Many reported cases in which leave to file cross-claims was granted involved lengthier "delays." Tragarz v. Keene Corp., 980 F.2d 411, 431-432 (7th Cir. 1993)(district court erred in denying request to file cross-claim made after the trial had begun, after the close of evidence, during the jury instruction conference, 3 years after case was filed, and 2 years after trial court granted defendants leave to file cross-claims generally); National Gypsum Co. v. Continental Brands Corp., 895 F. Supp. 328, 344-345 (D. Mass. 1995)(motion for leave to file cross-claim filed 1 year and 5 months after complaint was filed); State Teacher's Retirement Board v. Fluor Corp., 589 F. Supp. 1268, 1269-1270 (S.D.N.Y. 1984)(co-defendant's motion for leave to file cross-complaint granted even though filed 8 years after action was commenced, and shortly before trial was to start, and after plaintiff and other defendant had reached settlement on all issues, and where settlement was dependent on co-defendant not being permitted to file a cross-claim); Slotkin v. Brookdale Hospital Center, 377 F. Supp. 275, 280 (S.D.N.Y. 1974)(defendant's motion for leave to file cross-claim against co-defendant granted even though other cross-claims against same co-defendant had been pending for 2½ years and more than 2 years had passed since plaintiff had dismissed its primary action against that defendant); U.S. v. Sherwood Distilling Co., 235 F. Supp. 776, 780 (D. Md. 1964) (defendant's motion for leave to file supplemental cross-complaint against co-defendant

8

would not be denied on grounds of undue delay even though 3 years had passed since filing of original cross-claim); Boskoff v. Yano, 217 F. Supp. 2d 1077, 1093-1094 (D. Haw. 2001)(defendant's motion for leave to file cross-claim granted even though 4 years had lapsed since suit was filed; two years had lapsed since the plaintiff dismissed his complaint against defendant; trial was only 3 months away; the discovery deadline was only 1 month away; and the deadline for filing dispositive motions had already passed); Taylor Inv. Corp. v. Weil, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001) (defendant's motion for leave to file cross-claim granted even though 2½ years had lapsed since suit was filed); Fiorello v. Sobral, 164 F. Supp. 559 (E.D.N.Y. 1958) (defendant's motion for leave to file cross-claim granted even though 2 years had lapsed since suit was filed); Dunlap v. Aulson Corp., 90 F.R.D. 647, 657 (D.N.H. 1981) (defendant's motion for leave to file cross-claim granted even though 2½ years had lapsed since suit was filed); American General v. Equitable General, 87 F.R.D. 736, 738-739 (E. D. Va. 1980)(defendant's motion for leave to file cross-claim granted even though over 2 years had lapsed since suit was filed); Complaint of American Export Lines, Inc., 76 F.R.D. 210, 213 (S.D.N.Y. 1977)(defendant's motion for leave to file cross-claim granted even though over 4 years had passed since suit was filed); Lyons v. Marrud, Inc., 46 F.R.D. 451, 456 (S.D.N.Y. 1968)(defendant's motion for leave to file cross-claim granted even though approximately 2 years had passed since suit was filed); Fogel v. United Gas Imp. Co., 32 F.R.D. 202, 203-204 (E.D. Pa. 1963) (defendant's motion for leave to file cross-claim granted even though approximately 3 years had passed since suit was filed); Towns v. Altman, 4 F.R.D. 142, 143 (E.D. Wis. 1944)(motion for leave to file cross-claim allowed even though made after jury verdict had been rendered against defendant). See also, Munters Corp. v. Burgess Industries Inc., 450 F. Supp. 1195, 1206 (S.D.N.Y. 1977)(motion for leave to file cross-claim allowed even though made on eve of trial); Connell v. Bernstein-Macauley, Inc., 67 F.R.D. 111, 117 (S.D.N.Y. 1975)(motion for leave to file cross-claim allowed even though made 1 year after answer was filed).

     In conformity, as one would expect, the time period between the filing of a complaint and the filing of a motion involving a cross-claim in most of the reported cases where leave to file a cross-claim was denied was greater than the period in this case. Indemnity Ins. Co. of North America v. Browning-Ferris Machinery Co., 227 F.2d 804, 809 (5th Cir. 1955)(motion for leave to file cross-claim made after judgment had been entered); Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2nd Cir. 1984) (motion made 3 years after action was filed and on eve of trial); In re Arthur Andersen & Co., 621 F.2d 37, 40-41 (1st Cir. 1980)(motion made on eve of trial; roughly 9 to 7 years after case was filed; and 5 years after proposed co-defendant was made a defendant in the action); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 477-478 (D.C. Cir. 1976) (motion made almost 4 years after the action was commenced; more than 3 years after defendant had answered the complaint, almost 1½ after trial was completed and several months after the court rendered its findings and judgment), cert. denied, 434 U.S. 1086 (1978); In re Cessna Distributorship Antitrust Litigation, 532 F.2d 64, 68 (8th Cir. 1976)(motion made 3½ years after litigation began); In re Livent Securities Litigation, 193 F.Supp.2d 750, 754 (S.D.N.Y. 2002) (motion filed 1½ years after

9

movants had filed answers); Insurance Co. of North America v. Morrison, 156 F.R.D. 269, 270 (M.D. Fla. 1994)(lawsuit had been pending for over 3 years when motion filed). See, e.g., North Carolina Fox and Hound, Inc. v. Saul Subsidiary I Ltd. Partnership, 367 F. Supp. 2d 932, 944 (M.D.N.C. 2005)(motion to allow counterclaim too late when filed more than 2 years after lawsuit was commenced, and almost 1 year after parties had settled the only true issue in the case); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, 2002 WL 31812710, *6 (S.D.N.Y., Dec. 12, 2002)(motion to allow amendment to complaint to add claim against third-party defendant too late when filed more than 3½ years after lawsuit was commenced).

      As a further comparison, in reported cases where leave to file cross-claims was denied because of "undue delay," there were other considerations or factors which would have dictated denial anyway, or, mandated denial when coupled with the delay. Indemnity Ins. Co. of North America v. Browning-Ferris Machinery Co., 227 F.2d 804, 809 (5th Cir. 1955)(district court did not err in denying surety's post-judgment motion for leave to file cross-claim against principal where issues presented by cross-claim were, "solely between surety and principal were no part of the case either in evidence, submission, or verdict."); In re Arthur Andersen & Co., 621 F.2d 37, 41 (1st Cir. 1980) (allowing cross-claim would have negated hard earned settlement previously reached between co-defendant and plaintiff); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 477-478 (D.C. Cir. 1976)(reopening litigation to allow post-judgment cross-claim would be judicially uneconomical and inflict a hardship on the parties and issues involved in cross-claim were not tried by implied consent at trial); In re Cessna Distributorship Antitrust Litigation, 532 F.2d 64, 68 (8th Cir. 1976)(allowing cross-claim would negate expensive and time consuming efforts of plaintiffs and other co-defendants to reach settlement and thwart the major object of that settlement which was to extricate those co-defendants from the litigation); In re Livent Securities Litigation, 193 F.Supp.2d 750, 754 (S.D.N.Y. 2002)(allowing cross-claims would be futile where some defendants against whom cross-claims were to be filed had already been dismissed from action and other cross-claims were for indemnification against remaining defendants and indemnification is not available for defendants in security frauds case). See also North Carolina Fox and Hound, Inc. v. Saul Subsidiary I Ltd. Partnership, 367 F. Supp. 2d 932, 944 (M.D.N.C. 2005)(allowing counterclaim would essentially eviscerate settlement previously reached between the parties); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, Case No. 99 Civ.2952 LBS, 2002 WL 31812710, *6 (S.D.N.Y., Dec. 12, 2002)(purpose of amendment to complaint to add claim against third-party defendant was to improperly leverage support in litigation from third-party defendant which had already settled with defendant; third-party defendant would have to take further discovery because proposed amendment invoked entirely different legal theories than those in complaint; and third-party defendant had already settled with defendant and amendment would frustrate third-party defendant's effort to save the expense of trial by exiting the case).

      As will be explained below, AmSouth has not demonstrated: (1) that it will be prejudiced if LICOA is permitted to file its cross-claim; (2) that LICOA's cross-claim is

10

futile; or (3) that any other factors which, when coupled with the time which passed between the date that this case began and LICOA filed the present motion, mandate denial of that motion.

### 2. Specific Considerations

### (a) Undue Delay and Prejudice

AmSouth cited nine cases in support of its contention that LICOA's motion for leave to file a cross-claim is untimely. Those were: Foman v. Davis, 371 U.S. 178 (1962); Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036 (11th Cir. 2006); Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281 (11th Cir. 2003); Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281 (11th Cir. 2000); Jennings v. BIC Corp., 181 F.3d 1250 (11th Cir. 1999); Burger King Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999); Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118 (11th Cir. 1993); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, Case No. 99 Civ.2952 LBS, 2002 WL 31812710 (S.D.N.Y., Dec. 12, 2002); and American Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184 (S.D.N.Y. 1997). It is this Court's interpretation that those cases do not mandate denial of LICOA's motion.

Eight of the cases cited by AmSouth involved motions for leave to file pleadings other than cross-claims. Those were: Foman v. Davis, 371 U.S. 178 (1962)(motion by plaintiff for leave to amend complaint); Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036 (11th Cir. 2006)(same); Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281 (11th Cir. 2003)(same); Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281 (11th Cir. 2000)(same); Jennings v. BIC Corp., 181 F.3d 1250 (11th Cir. 1999) (same); Burger King Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999)(motion for leave to amend counterclaim); Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118 (11th Cir. 1993)(motion to amend answer); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, Case No. 99 Civ.2952 LBS, 2002 WL 31812710 (S.D.N.Y., Dec. 12, 2002)(plaintiff's motion for leave to amend complaint to add claim against third-party defendant). Thus the distinct considerations of judicial economy which cross-claims invoke were not present in those cases.

In addition, several of the cases cited by AmSouth involved salient factors other than "undue delay," factors which mitigated in favor of denial of the motions in those cases. Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036 (11th Cir. 2006)(motion by plaintiff for leave to amend complaint denied where amendment at that stage of the litigation would prejudice defendant's ability to defend itself in concurrent federal and state court actions); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, Case No. 99 Civ.2952 LBS, 2002 WL 31812710 (S.D.N.Y., Dec. 12, 2002)(plaintiff's motion for leave to amend complaint to add claim against third-party defendant denied where amendment invoked entirely different legal theories

11

than original complaint; third-party defendant had already settled with original defendant in an effort to exit the case and save the expense of trial and plaintiff's proposed amendment would draw third-party defendant back into the litigation, delaying resolution of the dispute, and impede third-party defendant's ability to bring claim for indemnification from its insurer before state board); American Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184 (S.D.N.Y. 1997)(district court denied motion for leave to file cross-claim where cross-claim was futile because it could result in no relief as a matter of law).

Furthermore, several of the cases cited by AmSouth involved substantially longer periods of "delay" than that involved in this case. Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036 (11th Cir. 2006)(consolidated cases had been pending since between 1998 and 2000; judgment on pleadings was entered in favor of defendant in one of the cases in August 2001; and Court of Appeals opinion wasn't issued until 2006; an ostensible time span of from 6 to 8 years); Jennings v. BIC Corp., 181 F.3d 1250 (11th Cir. 1999)(motion filed 34 months after complaint filed); Burger King Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999)(respective motions filed 40 months, 47 months, and 51 months after filing of original counterclaim); Millgard Corporation v. E.E. Cruz/Nab/Frontier-Kemper, 2002 WL 31812710 (S.D.N.Y., Dec. 12, 2002)(motion filed 3½ years after filing of original complaint).

And finally, in several of the cases cited by AmSouth the amendment or pleading was filed after expiration of a court imposed deadline, on the eve of trial, or otherwise at a time that would conflict with that deadline. Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281 (11th Cir. 2003)(motion filed 17 months after filing of original complaint, on last day of already extended discovery deadline, and on last day for filing dispositive motions); Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281 (11th Cir. 2000)(motion filed over a year after filing of original complaint and 8 months after deadline for filing amendments established in scheduling order had passed); Jennings v. BIC Corp., 181 F.3d 1250 (11th Cir. 1999)(motion filed 2 months before trial was scheduled to begin and 5 months after deadline for filing amendments); Burger King Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999)(motion filed 51 months after filing of original counterclaim and on eve of trial).

Here, a trial date has not been set and no deadlines have been established. LICOA's motion has not been filed on the eve of trial, and its filing does not violate or threaten any court established deadline.

AmSouth also cited cases from the Eleventh Circuit Court of Appeals. While those cases involved substantially dissimilar circumstances than those involved in this case, as discussed below, Eleventh Circuit precedent clearly supports this Court's exercise of its discretion to allow LICOA's proffered cross-claim.

12

The amount of time since this case was filed is not substantial, if considered in relation to the posture of this case and the time ordinarily required to resolve lawsuits in general. But even if that time was substantial, in this Circuit without evidence of prejudice to AmSouth or bad faith on the part of the plaintiffs, there is no reason to justify denying LICOA the opportunity to amend its answer to assert a cross-claim. See Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2001) (reversing district court's denial of plaintiff's motion for leave to amend complaint filed 3 years after original complaint where district court did not give any reason, other than the mere passage of time, to support its conclusion that allowing the plaintiffs to amend their complaint would prejudice the defendants). Based on that principle, the Court in Bryant held, "Because there is no evidence that allowing an amendment at this stage would prejudice the defendants, the district court should have allowed the plaintiffs to amend their complaint." Id. at 1165. See also Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1490 (11th Cir.1989) rev'd on other grounds, 499 U.S. 530 (1990)("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend."); Indemnity Ins. Co. of North America v. Browning-Ferris Machinery Co., 227 F.2d 804, 809 (5th Cir. 1955)("That [surety's motion for leave to file cross-claim] comes after judgment would not bar action since Rule 15(b) gives substantial latitude to amend even then." (parenthetical added)); Indemnity Ins. Co. of North America v. Browning-Ferris Machinery Co. at 809 ("We mean always to infuse vitality in Rule 15.").

Then there is the issue of whether LICOA knew of facts which should have led it to recognize a right to a cross-claim against AmSouth when it filed its original answer. In that regard, the rules do not require a party to assert a cross-claim immediately after learning of facts on which a cross-claim could be based. Therefore, assuming for the sake of argument that AmSouth is correct, and LICOA knew of the facts necessary to sustain its cross-claim when it filed its original complaint, that, standing alone, provides no basis for denying LICOA's assertion of its cross-claim at this point in time. Prudence required LICOA to investigate the facts necessary to support its cross-claim. And there is no basis for the Court to conclude that the time that passed was unreasonable.

AmSouth also contends that it will be prejudiced by LICOA's cross-claim because it would delay trial and "cause discovery to be re-opened." Because a trial date has not been set, the Court cannot find that the trial will be delayed. Similarly, because a discovery deadline has not been set, discovery has not been "closed." Therefore, LICOA's cross-claim cannot cause discovery to be "reopened."

But what if LICOA is not allowed to file its cross-claim? Would the time frames be different? The Court does not know when the trial will be held whether the cross-claim is included or not. Therefore, it cannot determine whether prosecution of the cross-claim might delay the beginning of the trial of this matter beyond the date that it would otherwise begin if LICOA is not permitted to file its cross-claim. And without being able to quantify that delay, the Court cannot find that any such "delay" will be prejudicial to AmSouth.

13

The same is true for AmSouth's discovery contention. Since no discovery deadline has been established, none of the parties is foreclosed from conducting additional discovery. Therefore, the Court does not know when discovery would be completed whether the cross-claim is prosecuted or not. The analysis and the result are the same as above. The Court cannot find that "additional" discovery will be prejudicial to AmSouth.

AmSouth equates delay with prejudice, but to do so eliminates the dual requirement of "undue delay." There is no evidence that prosecution of the cross-claim would be undue delay. Similarly, there is no evidence that prosecution of the cross-claim would even delay the process at all. And finally, there is no evidence that AmSouth will be prejudiced if LICOA is allowed to prosecute its cross-claim.

And finally, AmSouth suggest that if LICOA's cross-claim is not included here, AmSouth will avoid the time and expense of defending it. That may be true as to the prosecution of the cross-claim in this Court. But is LICOA not entitled to assert its cross-claim for indemnity, which is permissive rather than compulsory, in a separate action in state court upon the conclusion of this case? If it is, there would be even greater delay than if the issues between the two were resolved in this Court. In addition, AmSouth's time and expenses would be at least the same in state court as they would be here.

When reviewing all of the above, the general considerations promoted by Rules 13 and 15 become even more essential. As discussed above, the mandate of Rule 15(a) is that leave to amend "shall be freely given when justice so requires." Id. Rule 13(g) should be, "construed liberally so as 'to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum procedural steps,'" State Teacher's Retirement Board v. Fluor Corp., 589 F. Supp. 1268, 1269-1270 (S.D.N.Y. 1984)(quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1431 at 161 (1971). Rule 13(g) should be construed, "to avoid circuity of action and to dispose of the entire subject matter arising from one set of facts in one action, thus administering complete and even handed justice expeditiously and economically." Blair v. Cleveland Twist Drill Co., 197 F.2d 842, 845 (7th Cir. 1952). And Rule 13(g) should be construed, "to promote the expeditious and economical adjudication of an entire subject matter arising from the same set of facts within a single action," Donovan v. Robbins, 588 F. Supp. 1268, 1273 (N.D. Ill. 1984).

Based on the above, the Court finds that the filing of LICOA's cross-claim would not cause undue delay and prosecution of it will not cause undue delay or prejudice to AmSouth.

### (b) Statute of Limitations

LICOA's cross-claim is based on two theories of recovery, one for breach of contract and the other for breach of fiduciary duty. AmSouth argues that the breach of

14

contract action is barred by Code of Ala. 1975, § 6-2-34. That section requires such an action to be instituted within six years from the date it accrued. AmSouth also argues that the breach of fiduciary duty cause of action is barred by Code of Ala. 1975, § 6-2-38. That section requires such an action to be instituted within two years from the date it accrued. AmSouth concludes that LICOA's cross-claim is time barred, and therefore the motion for leave to file the cross-claim should be denied.

The Court disagrees. LICOA's cross-claim is for indemnity, that is, if it is liable to Mrs. Andrews, then, to that extent, AmSouth is liable to it because its liability to Mrs. Andrews will have resulted either from AmSouth's breach of the contract with LICOA or its breach of a fiduciary duty owed to LICOA. The cross-claim reads:

> In the event plaintiff Virginia Andrews is entitled to recover on her complaint against Life of Alabama, which Life of Alabama denies, such recovery would be the result of the wrongful conduct of AmSouth Bank, which would entitle Life of Alabama to indemnification and contribution for any liability Life of Alabama may incur to plaintiff Virginia Andrews.

<u>Cross Claim of Defendant Life Insurance Company of Alabama Against Defendant AmSouth Bank</u> at 2, ¶ 4, attached to <u>Motion to Allow Filing of Cross Claim by Life Insurance Company of Alabama Against Co-Defendant AmSouth Bank</u> (Proceeding No. 66, A.P. No. 06-40016).

The limitations period on LICOA's indemnity claim will not begin to run until its liability to Mrs. Andrews has been adjudicated, determined, and fixed. <u>Ex parte Stonebrook Development, L.L.C.</u>, 854 So.2d 584, 591 (Ala. 2003); <u>American Commercial Barge Line Co. v. Roush</u>, 793 So.2d 726, 729-30 (Ala. 2000); <u>Choice Builders, Inc. v. Complete Landscape Service, Inc.</u>, 955 So.2d 437, 440-441 (Ala. Civ. App. 2006). And since the statutory limitations period applicable to LICOA's indemnity claims has not yet begun to run, those claims cannot possibly be time barred.

## IV. Conclusion

Based on the above, the Court concludes that LICOA should be permitted to file its cross-claim against AmSouth.

A separate order will be entered in conformity with this memorandum opinion.

Dated: September 26, 2007  /s/Benjamin Cohen  
                                                      BENJAMIN COHEN  
                                                      United States Bankruptcy Judge

BC:sm